UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PORT OF SEATTLE,<br><br>              Plaintiff,<br>   v.<br><br>DONALD WANG,<br><br>              Defendant. | CASE NO. 2:24-cv-00735-TL<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

    This action arises from Plaintiff Port of Seattle's ("the Port") complaint in admiralty against Defendant Donald Wang, related to the mooring of two wood commercial fishing vessels at the Port. This matter is before the Court on Plaintiff's Motion for Summary Judgment. Dkt. No. 12. Having considered Defendant's response (Dkt. No. 25), Plaintiff's reply (Dkt. No. 37), the Parties' supplemental briefing regarding ownership of the vessels (Dkt. Nos. 42, 46, 49), and the relevant record,[1] the Court GRANTS Plaintiff's motion.

---

[1] Neither party requested oral argument, and the Court finds oral argument unnecessary. *See* LCR 7(b)(4).

# I. BACKGROUND

The following facts are undisputed unless otherwise noted.

## A. Relevant Background

### 1. Moorage at the Port

Between 2015 and 2023, two wood commercial fishing boats were moored at Fisherman's Terminal, a marina and storage facility operated by the Port: (1) the F/V ALMA (United States Coast Guard ("USCG") Registration No. 228220), a 60-foot wood commercial fishing vessel built in 1929; and (2) the F/V THOR (USCG Registration No. 224713), a 62-foot wood commercial fishing vessel built in 1925 (together, the "Vessels"). *See* Dkt. No. 18 (Giometti Decl.) ¶ 6 (noting that the ALMA and THOR were moored at the Port between 2015 and 2016, respectively, through 2023, when they were dismantled); Dkt. No. 15-1 (Ex. A to DeSota Decl.) at 1 (invoice for removal and disposal of ALMA, noting completion between September 13, 2023, and October 20, 2023), 11 (invoice for removal and disposal of THOR, noting completion between September 13, 2023, and October 25, 2023); *see also* Dkt. No. 24 ¶ 13 (admitting that the Vessels remained at Fisherman's Terminal until the Port took possession of them). Plaintiff contends that on June 4, 2015, Defendant purchased for $1 the ALMA, and that on July 12, 2016, he purchased for $1 the THOR. Dkt. No. 12 at 3; Dkt. No. 1 (complaint) ¶ 8; *see also* Dkt. No. 18-2 (general index or abstract of title for ALMA and THOR). Defendant disputes this contention. Dkt. No. 24 (answer) ¶ 8. *But see* Dkt. No. 24 ¶¶ 10–11 (acknowledging that Defendant entered into an agreement with the Port for the moorage of the ALMA on behalf of the Francis D. Wang Living Trust); Dkt. No. 25 at 4 (acknowledging that Defendant spent over $100,000 on repairs to the Vessels).

Pursuant to the Port's obligations as a moorage facility operator under RCW 53.08.310(2) and RCW 53.08.320, the Port published Moorage Tariff No. 6, which sets out moorage and

1  utility rates for vessels at Fisherman's Terminal and requires that vessel owners provide the Port
2  with proof of liability insurance coverage of at least $300,000. *See* Dkt. No. 18-1 (Ex. A to
3  Giometti Decl.: Moorage Tariff #6) at 16 (requirement of proof of liability insurance coverage).
4      Between 2015 and 2023, Defendant failed to provide the required proof of insurance
5  coverage for either the ALMA or the THOR. Dkt. No. 18 ¶ 7. Between October 2019 and 2023,
6  Defendant failed to make payments to the Port for moorage and utilities. Dkt. No. 14-1 (Ex. A to
7  Lam Decl.).
8      In 2022, Plaintiff began the process to seize control of the ALMA and the THOR as
9  derelict vessels. Dkt. No. 15 (DeSota Decl.) ¶ 4.

### 2. Administrative Proceedings

On July 6, 2022, Plaintiff posted, published, and sent Defendant notice of its intention to take custody of the Vessels pursuant to 79.100 RCW ("Derelict Vessels"). Dkt. No. 15 ¶ 4. In response, Defendant appealed the Port's decision with the Pollution Control Hearing Board ("PCHB"). *Id.* ¶ 4. While that appeal was pending, the Parties agreed to give Defendant another month to either sell the Vessels or remove them from Fisherman's Terminal, and Plaintiff subsequently withdrew without prejudice its notification of intent to seize the Vessels. *Id.* ¶ 5. Defendant failed to sell or remove the Vessels or resolve his outstanding moorage and utilities balance with the Port. *Id.* ¶ 5.  In October 2022, Plaintiff again provided Defendant notice of its intention to take custody of the Vessels. *Id.*; Dkt. No. 12-1 (Findings of Fact, Conclusions of Law and Order, *Wang v. Port of Seattle*, WA PCHB No. 22-083c (Jan. 4, 2023)) ¶ 4. Defendant again appealed the Port's decision with the PCHB, and a hearing was held on November 15, 2022, before Board Member Neil Wise and Administrative Appeals Judge Heather Coughlan. Dkt. No. 12-1 ¶ 2.

Following the hearing, the PCHB issued its Finding of Fact, Conclusion of Law and Order, finding that "[t]he Port of Seattle's Notices of Intent to Obtain Custody of the vessels THOR and ALMA are AFFIRMED. The Port may collect from Donald Wang all reasonable and auditable costs associated with taking possession, removal or disposal of the THOR and ALMA." Dkt. No. 12-1 at 14. Defendant appealed the PCHB's decision to the King County Superior Court, which directed Defendant to move for an order on certification for direct review by May 2, 2023. Dkt. No. 13-1 (Ex. A to Jordan Decl.) at 2. When Defendant failed to do so (or take any other action), the Clerk dismissed the appeal on June 28, 2023. Dkt. No. 13-2 (Ex. B to Jordan Decl.) at 2. Defendant then filed a motion to set aside dismissal, which was denied. *See* Dkt. No. 13-3 (Ex. C to Jordan Decl.).

Following Defendant's appeals, Plaintiff moved forward with disposal of the Vessels. Dkt. No. 15 ¶ 5.

### 3. Disposal of the Vessels

Plaintiff, in consultation with boat brokers, determined that the most cost-effective means of disposal of the Vessels was dismantling; accordingly, Plaintiff contracted with Global Diving and Salvage ("GDS") to remove, dismantle, and dispose of the ALMA and THOR by towing the Vessels to Port Townsend, Washington, for dismantling. *Id.* ¶ 6. Plaintiff paid GDS $116,030.07 for the removal and dismantling of the ALMA, and $103,155.25 for the removal and dismantling of the THOR. Dkt. No. 15-1 at 2, 11.

On March 1, 2024, Plaintiff invoiced Defendant for these costs, as well as for costs Plaintiff had incurred by posting notice of intent to obtain custody of the Vessels, as well as attorney fees. Dkt. No. 15-4 (Ex. D to DeSota Decl.). Defendant has not made any payments to Plaintiff to date. Dkt. No. 15 ¶ 8.

B.    **Procedural History**

On May 28, 2024, Plaintiff filed a complaint in admiralty against Defendant to recover costs for the removal and dismantling of the Vessels, as well as for costs incurred by Plaintiff when it posted notices of intent to obtain custody of the Vessels and attorney fees. Dkt. No. 1. Defendant is proceeding *pro se*. On January 15, 2025, Plaintiff filed the instant motion for summary judgment. Dkt. No. 12.

On June 16, 2025, the Court ordered the Parties to provide supplemental briefing on the issue of Defendant's ownership of the ALMA and THOR. Dkt. No. 41; *see also* Dkt. Nos. 42, 46, 49 (supplemental briefing).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact

1  cannot be or is genuinely disputed must support the assertion"). Unless the burden of production

2  is met, "the nonmoving party has no obligation to produce anything" to support its claims or

3  defenses. *Nissan Fire*, 210 F.3d at 1103.

4  Courts do not make credibility determinations or weigh the evidence at this stage. *See*

5  *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual

6  issues in favor of a non-moving party, "only in the sense that, where the facts specifically

7  averred by that party contradict facts specifically averred by the movant, the motion must be

8  denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific

9  affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further,

10 uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo*

11 *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

### III. Discussion

### A. Motion to Strike

14 Defendant moves to strike the declaration of Richard Blomquist (Dkt. No. 17), arguing

15 that the declaration "relied entirely upon the hearsay of others whose contentions the plaintiff

16 disputes." Dkt. No. 32 (motion to strike) at 1.

17 Defendant first argues that under *Crawford v. Washington*, 541 U.S. 36 (2004), Mr.

18 Blomquist's declaration should be stricken as violating the Confrontation Clause of the Sixth

19 Amendment. *See* Dkt. No. 32 at 2. But the Confrontation Clause, which prohibits the

20 introduction of "testimonial" out-of-court statements by witnesses whom the accused had no

21 opportunity to confront, does not apply to civil proceedings. *See United States v. Zucker*, 161

22 U.S. 475, 482 (1896) (establishing that the Confrontation Clause does not apply in civil

23 proceedings); *see also United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir.

24 2009). In any case, Mr. Blomquist was identified to Defendant as an expert witness on February

10, 2025, which was the deadline for expert witness disclosures (Dkt. No. 38 (Supplemental Jordan Decl.) ¶ 2), and discovery did not close until April 10, 2025 (Dkt. No. 11). Accordingly, Defendant was afforded the opportunity to serve discovery on and/or depose Mr. Blomquist but chose not to do so. *See* Dkt. No. 38 ¶¶ 2–3.

Defendant next argues that Mr. Blomquist's declaration violates Federal Rule of Evidence 703 because it was prepared solely for the purpose of litigation. Dkt. No. 32 at 3. But the comment upon which Defendant relies only notes that an expert opinion should rely on material that is customarily relied upon—and here, Mr. Blomquist's Pollution Vessel Abatement, Demolition and Disposal Review shows that it was created after Mr. Blomquist's review of materials that do not appear to have been created for the purposes of litigation. *See* Dkt. No. 17-2 at 2 (indicating that Mr. Blomquist relied on a purchase order, scope of work agreement, progress bill, bills of lading, and final invoice for his review).

Therefore, Defendant's motion to strike is DENIED.

**B.    Asserted Factual Disputes**

**1.    Ownership of the ALMA and THOR**

Defendant disputes his ownership of the ALMA and THOR.[2] Dkt. No. 24 ¶¶ 10–11.

With its Motion, Plaintiff provided the Coast Guard Certificate of Registry for the ALMA and THOR. *See* Dkt. No. 18 ¶ 5; Dkt. No. 18-2. The Certificate of Registry (also referred to as the "Abstract of Title") indicates that the THOR was last purchased on July 12, 2016, by "Donald P. Wang Trustee of the Frances D. Wang Trust fob [sic] Donald P. Wang." Dkt. No. 18-2 at 6. It also indicates that the ALMA was purchased by Donald P. Wang on June 4, 2015 (*id.* at

---

[2] Defendant did not contest ownership in his opposition to the instant motion, and the Court could have considered that argument to be waived. However, out of an abundance of caution and because the Certificate of Registry did not clearly show that Defendant owned the Vessels, the Court requested supplemental briefing from the Parties.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 7

13) and that the ALMA was subsequently purchased by "Tuna Galore LLC" on July 16, 2015 (*id.*).

But as Plaintiff demonstrated in its supplemental briefing on the issue, the PCHB's finding of fact that the Vessels were owned by Defendant sufficiently establishes that Defendant was the owner of both Vessels for purposes of this litigation. *See* Dkt. No. 42 at 5–7.

To determine the preclusive effect of state judgments in federal court, the court must apply state law. *Fernhoff v. Tahoe Reg'l Planning Agency,* 803 F.2d 979, 986 n.8 (9th Cir. 1986). As the Court previously noted, "Washington accords preclusive effect to agency determinations of factual conditions"—such as the PCHB's finding that Defendant was owner of the Vessels—where the elements of collateral estoppel have been satisfied. Dkt. No. 41 at 2 (quoting *Friends of the Earth v. Hall*, 693 F. Supp. 904, 920 (W.D. Wash. 1988)). Under Washington law, collateral estoppel requires that (1) identical issues exist; (2) there has been a final judgment on the merits; (3) the party against whom the plea is asserted was a party to or in privity with a party to the prior adjudication; (4) application of the doctrine would not work an injustice on the party against whom the doctrine is to be applied; and (5) the issue to be precluded was actually litigated and necessarily determined in the prior action. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507–08, 745 P.2d 858 (1987) (citing *Malland v. Dep't of Ret. Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985)). Additionally, where, as here, the prior adjudication took place before an administrative body, the Court must consider "(1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations." *Id.* at 508 (quoting *State v. Dupard*, 93 Wn.2d 268, 275, 609 P.2d 961 (1980)).

All of the factors for application of collateral estoppel are present in this case. The issue before this Court and the PCHB—responsibility for costs associated with taking possession, removal, and disposal of the Vessels—is identical. *Compare* Dkt. No. 1 (complaint) at 6–7, *with*

Dkt. No. 12-1 at 6–7. The PCHB's findings of fact and conclusions of law constitute a final judgment on the merits. *See Shoemaker*, 109 Wn.2d at 510 ("There was a final adjudication on the record in the form of findings of fact and conclusions of law."). Plaintiff and Defendant were both parties to the PCHB action. *See* Dkt. No. 12-1 at 2. No injustice to Defendant will result if he is precluded from relitigating the issue of his ownership of the Vessels—indeed, Defendant has held himself out as the owner of both Vessels throughout the PCHB proceedings, his appeal of the PCHB decision, and the present litigation. *See, e.g.*, Dkt. No. 43 (2d Supplemental Jordan Decl.) at 5 (letter from Defendant regarding "my 1929 60' Fishing Vessel Alma"), 8 (letter from Defendant regarding "my 1925 62'Fishing Vessel Thor"), 13 (petition for review of PCHB decision by Defendant, asserting that "[b]oth vessels are owned by Wang"); Dkt. No. 25 at 4 (assertion by Defendant that he spent over $100,000 on repairs to both Vessels and intended to send them out for fishing but was prevented due to the COVID-19 pandemic). And the issue to be precluded here—ownership of the Vessels—was actually litigated and determined in the PCHB action. *See* Dkt. No. 12-1 at 3 ("Both vessels are owned by Wang.").

The additional factors for preclusion based on a prior adjudication before an administrative body are also met. RCW 43.21B.110(1)(m) provides the PCHB with jurisdiction over appeals of decisions of an authorized public entity to take possession of custody of a vessel or reimbursement regarding the same. Therefore, the PCHB acted within its competence when it made a factual decision in this case, as it had jurisdiction over the matter pursuant to the plain terms of RCW 43.21B.110(1). *See Shoemaker*, 109 Wn.2d at 508 (holding that administrative body had power to conduct inquiry and make findings pursuant to "plain terms" of statute). The procedures employed by the PCHB are sufficient to justify giving preclusive effect to the PCHB's decision on the issue of Vessel ownership. *See Shoemaker*, 109 Wn.2d at 509–10. Defendant received notice of the Port's intent to seize the Vessels pursuant to RCW 79.100.040,

ORDER ON MOTION FOR SUMMARY JUDGMENT - 9

satisfying the requirement for adequate notice. *See id.* at 510. Defendant had the opportunity to bring evidence before the PCHB and did in fact testify before the PCHB, thereby satisfying the requirement of a fair opportunity to present and rebut evidence. *See id.* There was a final adjudication on the record in the form of findings of fact and conclusions of law, which Defendant had the opportunity to appeal (and did, in fact, appeal). *See id.* In sum, the procedural safeguards afforded Defendant in the proceedings before the PCHB are sufficient to justify the application of collateral estoppel here. Finally, policy considerations support the application of collateral estoppel: as Plaintiff has pointed out, the Washington legislature has specifically determined derelict vessels to be "public nuisances and safety hazards," and the PCHB determined the Vessels in this action to be derelict and subject to seizure and disposal. *See* Dkt. No. 42 at 7 (quoting RCW 79.100.005); *see also* Dkt. No. 12-1. Adhering to the PCHB's decision with regard to ownership of the Vessels, which Defendant had a full opportunity to challenge and litigate before the PCHB, would promote judicial economy and is in the public interest. *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995) ("The public interests served include avoiding inconsistent results and preserving judicial economy.").

Defendant argues that adhering to the doctrine of collateral estoppel in this regard would bind the Frances D. Wang Trust and Tuna Galore LLC by the actions of a non-attorney who could not legally represent them. Dkt. No. 46 at 2. However, as Plaintiff responds, it "is not asserting claims in the current action against the LLC or the Trust but against Wang, in his individual capacity as owner of the Vessels ALMA and THOR by his own admissions and conduct." Dkt. No. 49 at 1. The Court agrees. Any finding that the Vessels were owned by Defendant, rather than the Trust or LLC, would not bind those entities to any decision by this Court or representation by Defendant.

Therefore, the Court FINDS that Defendant Donald Wang is the owner of both the ALMA and THOR.

### 2. Whether the Vessels Were Derelict

Defendant disputes his liability under the Derelict Vessel Act, arguing that the definitions set forth in that statute should not apply because "context clearly requires otherwise." *See* Dkt. No. 25 at 2. The thrust of Defendant's argument is that due to the "temporary unavailability of insurance due to the pandemic," he should not have been required to obtain insurance for the Vessels and they should not have been determined to be derelict.

But for the same reasons as the Court outlined above, *supra* Section III.B.1, Defendant is estopped from arguing that the Vessels were not derelict under the definitions set forth in the Derelict Vessel Act because the PCHB determined the Vessels to be such, and that decision is binding on the Parties. Dkt. No. 12-1 at 9–10 (finding that the ALMA and THOR were derelict vessels under the definition in the Derelict Vessel Act). Indeed, the PCHB specifically concluded that Defendant "ha[d] not identified any context that requires use of definitions outside the statute when the statute clearly defines the relevant term." *Id.* at 9.

Contrary to Defendant's argument, Plaintiff has not "conceded" that "the insurance requirement was unattainable during a pandemic." *See* Dkt. No. 25 at 2–3. The passage on which Defendant relies for that purported concession makes clear that the statement that "the vessels could not be insured in their current state" refers to the Vessels' "extreme age" and "need of extensive repairs"—not the COVID-19 pandemic. *See* Dkt. No. 15 ¶ 6. And while Defendant argues that "[a]ccording to him, both boats were seaworthy . . . and [he] was prevented from making a profit by sending them out for fishing because of difficulties of obtaining a crew and/or insurance during a pandemic," he does not present any reason for the Court to set aside the findings of the PCHB.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 11

Therefore, the Court FINDS that the ALMA and THOR were derelict under the meaning of the Derelict Vessel Act.

* * *

Having found there to be no dispute as to any material fact, the Court turns to the question of whether Plaintiff is entitled to judgment as a matter of law.

**C.    Plaintiff's Entitlement to Fees and Costs Incurred to Dispose of the Vessels Pursuant to the Derelict Vessel Act**

Plaintiff contends that it is entitled to recover fees and costs incurred to dispose of the Vessels pursuant to the Derelict Vessel Act. Dkt. No. 12 at 7. The Court agrees.

The Derelict Vessel Act provides in relevant part that "[t]he owner of an abandoned or derelict vessel . . . is responsible for reimbursing an authorized public entity for all reasonable and auditable costs associated with the removal or disposal of the owner's vessel under this chapter." RCW 79.100.060(1). "These costs include, but are not limited to, costs incurred exercising the authority granted in RCW 79.100.030, all administrative costs incurred by the authorized public entity during the procedure set forth in 79.100.040, removal and disposal costs, and costs associated with the environmental damages directly or indirectly caused by the vessel." *Id.* The Act also provides that reimbursement for costs may be sought from an owner through an action in "any court of competent jurisdiction" "[i]f the full amount of all costs due to the authorized public entity under this chapter is not paid to the authorized public entity within thirty days after first notifying the responsible parties of the amounts owed." RCW 79.100.060(2)–(3).

The Court has determined that, pursuant to the PCHB's decision, Defendant is the owner of the Vessels in this action, *supra* Section III.B.1, and the Vessels were derelict, *supra* Section III.B.2. Additionally, Plaintiff has established that Defendant was invoiced for the costs Plaintiff incurred in obtaining custody and disposing of the Vessels, and that Defendant did not pay the

sums due within 30 days after receipt of the invoices. Dkt. No. 15 ¶ 8; Dkt. No. 15-4 (copies of invoices sent to Defendant via certified mail). Accordingly, Plaintiff is entitled to recover reimbursement for its removal and disposal costs for the Vessels as a matter of law. *See McLaren v. State*, 194 Wn. App. 1035, 2016 WL 3456858, at *2 (Ct. App. June 20, 2016) (finding that administrative decision established vessel owner's liability for costs associated with Washington State Department of Natural Resources' actions).

Plaintiff has submitted declarations with exhibits showing the invoices submitted by GDS, Plaintiff's contractor, for securing the Vessels for towing, disposal of polluted bilge water, towage to Port Townsend, dismantling of the Vessels, and disposal of the Vessel parts and pollutants. *See* Dkt. No. 15 ¶ 7; Dkt. No. 15-1 (invoices). Additionally, Plaintiff has submitted a declaration and exhibits demonstrating that the costs paid by Plaintiff for disposal of the Vessels was reasonable. *See* Dkt. No. 17; Dkt. Nos. 17-2, 17-3. While Defendant disputes this contention, he offers no evidence to contradict it—and his own declaration is insufficient to create a genuine issue of material fact. *See* Dkt. No. 25 at 5; Dkt. No. 26 at 3; *see also Villiarimo*, 281 F.3d at 1061 ("However, this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."). Plaintiff has also submitted declarations with exhibits showing the invoices paid by Plaintiff to public notices of intent to seize the Vessels, as required by the Derelict Vessel Act. *See* Dkt. No. 15 ¶ 7; Dkt. No. 15-2 (invoices). Finally, Plaintiff has submitted declarations with exhibits showing the invoices for legal services paid by Plaintiff for services rendered representing Plaintiff before the PCHB and Superior Court in connection with Defendant's appeal of Plaintiff's seizure of the Vessels. *See* Dkt. No. 15 ¶ 7; Dkt. No. 15-3 (invoices).

Based on the terms of the Derelict Vessel Act and the evidence submitted by Plaintiff, the Court concludes that Plaintiff is entitled to recover: (1) $2,377.55 for costs incurred posting

notices of intent to seize the Vessels; (2) $219,185.32 for costs incurred seizing and disposing of the Vessels; and (3) $47,059.50 for costs incurred defending its decision to take custody of the Vessels before the PCHB and the Superior Court.

**D.    Plaintiff's Entitlement to Recover Moorage and Other Charges Pursuant to the Tariff**

Plaintiff contends that it is entitled to recover the charges due and owing under the Tariff. Dkt. No. 12 at 8–9. The Court agrees.

Pursuant to Plaintiff's authority under RCW 53.08.320, it issued Moorage Tariff No. 6, which sets out moorage and utility rates for vessels at Fisherman's Terminal. *See* Dkt. No. 18-1.[3] The Tariff dictates that "[a]ll vessels or vehicles using facilities or space within Port premises will be subject to all of the charges, rules, and conditions are prescribed by Port tariff." *Id.* at 13. These charges include "[c]harges for moorage and stowage, and all other charges owing or to become owing under . . . this tariff," including electric service charges and applicable taxes, as well as late fees. *Id.* at 9, 37 (electric service charges), 29–31 (noting that applicable taxes are in addition to named moorage rates), 34 (late fees). The Tariff also outlines that "[i]f the Port brings suit for collection of a delinquent account"—as it has here—"the prevailing party shall be paid by the other party actual attorney's fees not to exceed fifty percent (50%) of the amount claimed in such suit." *Id.* at 35.

Plaintiff has submitted declarations with exhibits showing the final invoice submitted to Defendant for moorage charges, including electricity charges and applicable taxes, related to the ALMA and THOR. *See* Dkt. No. 14; Dkt. No. 14-1. The invoice breaks down the specific

---

[3] While the Tariff submitted to the Court at Dkt. No. 18-1 is dated as being "[e]ffective January 1, 2024" (*see* Dkt. No. 18-1 at 1) Plaintiff has established that this Tariff has been in effect "since before [Defendant] first became a tenant at the Terminal" (Dkt. No. 18 ¶ 4). Additionally, Plaintiff has established that Defendant was billed at rates prescribed in the applicable Tariffs throughout the Vessels' moorage at the Port. *See* Dkt. No. 14 ¶¶ 3–4.

charges for each Vessel and the time period applicable to each. *See, e.g.*, Dkt. No. 14-1 at 2. And again, Defendant's declaration to the contrary, without corroborating evidence, is insufficient to overcome Plaintiff's submissions. *See* Dkt. No. 26 at 2; *Villiarimo*, 281 F.3d at 1061.

Based on Plaintiff's authority pursuant to RCW 53.08.320 and the terms of Moorage Tariff No. 6, as well as the evidence submitted by Plaintiff, the Court concludes that Plaintiff is entitled to recover: (1) $136,671.09 for moorage fees, electric service charges, taxes, and late fees related to the moorage of the Vessels at the Port; and (2) attorney fees, the final amount to be determined at the conclusion of this action and not to exceed $68,335.54.[4]

### IV. CONCLUSION

Accordingly, the Court GRANTS Plaintiff's motion. Defendant is ORDERED to pay:

(1) $2,377.55 for costs incurred by Plaintiff in posting notices of intent to seize the Vessels;

(2) $219,185.32 for costs incurred by Plaintiff in seizing and disposing of the Vessels;

(3) $47,059.50 for costs incurred by Plaintiff in defending its decision to take custody of the Vessels before the PCHB and the Superior Court;

(4) $136,671.09 for moorage fees, electric service charges, taxes, and late fees related to the moorage of the Vessels at the Port; and

(5) Attorney fees, the final amount to be determined at the conclusion of this action and not to exceed $68,335.54.

Plaintiff is ORDERED to file any motion for attorney fees within sixty (60) days of the date of this Order. The trial date and all pending deadlines are STRICKEN.

Dated this 30th day of July 2025.

Tana Lin
United States District Judge

---

[4] This number is fifty percent of the amount Plaintiff is entitled to recover for moorage fees, electric service charges, taxes, and late fees related to the moorage of the Vessels at the Port. *See* Dkt. No. 18-1 at 35.